IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

JOHN MARVIN SMITH, JR.,

               Plaintiff,

       Vs.                            No. 13-4084-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant John Marvin Smith, Jr.'s ("Smith") Title II application for disability insurance benefits under the Social Security Act ("Act"). Born in 1959, Smith alleges a disability onset set date of November 27, 2008, based on physical impairments. The administrative law judge ("ALJ") filed his six-page decision on November 10, 2012, finding that Smith was not under a disability through the date of his decision. (Tr. 29-35). With the Appeals Council's denial of Smith's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 8) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 14 and 15), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Smith had not engaged in substantial gainful activity since November 27, 2008. At step two, the ALJ found the

following severe impairments:   "mild degenerative joint disease of the right ankle and obesity." (Tr. 31). At this step, the ALJ noted that the consultative examination of February 6, 2010, by Dr. Jaclyn Jones, D.O., found "no limitations as to the use of hands to grasp or handle"1 and "dexterity was preserved and Tinel's and Phalen's signs were negative." (Tr. 32). The ALJ also rejected a consultative examination of August 2011, by Dr. Lynn Curtis, M.D., which included findings of "bilateral epicondylitis, recurrent carpal tunnel and cubital syndrome." (Tr. 32).

At step three, the ALJ found that the impairments, individually or in combination, did not equal the severity of the Listing of Impairments. (Tr. 32). Before moving to steps four and five, the ALJ determined that Smith had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b). He is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He has no limitations on his ability to sit; can stand and walk 4 of 8 hours, but not over 30 minutes at a time; needs to avoid concentrated exposure to extreme cold and vibration; and needs to avoid climbing ladders, ropes, and scaffolds except for short stepladders.

(Tr. 33). At step four, the ALJ found that the claimant was unable to perform his past relevant work as a forklift operator or wringer. (Tr. 34). Because of the

---

1 This is a quote from the ALJ's decision and not from Dr. Jones's report. There is no express finding in Dr. Jones's report that Smith has "no limitations as to the use of hands to grasp or handle." The doctor's report indicates that Smith's grip strength is 20 pounds but fails to describe where this result falls within the Jamar testing standards. (Tr. 308). Without this latter information, the ALJ appears to have reached a conclusion about grip limitations without medical evidence to support it.

claimant's additional limitations, the ALJ did not rely on the guidelines but on the vocational expert's testimony in concluding that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 35).

**TESTIMONY AND EVIDENCE RELEVANT TO ISSUES**

Smith testified about chronic pain and swelling in his right ankle that was fractured in 1991 and more recently reinjured stepping off a ladder. (Tr. 54). Smith said his pain and swelling has worsened over the years, and after the recent injury, the pain is not going away despite following the doctors' orders. (Tr. 54). Smith said his ankle pain increases after standing five or ten minutes or walking 300 to 400 steps. (Tr. 50-51). Smith said the increased swelling and pain would keep him from being on his feet six hours out of an eight-hour day. (Tr. 53). He also testified to carpel tunnel surgeries in the 1990's which left him with "no hands" and pain. (Tr. 49). As a result, he changed jobs from one that required repetitive arm and hand movement to a forklift operator. (Tr. 50).

After working at Prime Tanning for 26 years, Smith's last day was in the fall of 2008 when he injured his leg and could not "throw hides" so he went to the doctor. (R. 43). During his absence, Smith received six months of short-term disability payments, and Prime Tanning was sold to another

company who later did not rehire Smith. (Tr. 45). The employer's report indicates the last disability payment was made on May 31, 2009, and the last doctor's note was dated June 1, 2009, and excused Smith from work until after his appointment with Dr. Horton on June 23, 2009. (Tr. 186). In October of 2009, Smith reported that since July of 2009, he wears a brace "all the time" on his right foot. (Tr. 202). As for later attempts at employment, Smith testified that in the fall of 2010 he tried operating farm equipment. But after a little more than a month, the farmer/employer let him go because he could not scoop corn. (Tr. 44). Smith said he experienced right ankle swelling and pain from servicing the equipment and climbing in and out of the combine. *Id.*

Smith testified he drives a car with an automatic transmission. (tr. 55). He also owns a small farm with 80 acres that includes crop ground which he rents and grass on which he keeps ten cows. (Tr. 48). Smith has an adult son who lives in a different residence on the farm and who helps out by doing "it all" and taking care of the cows. (Tr. 49). Smith does a few household chores. (Tr. 53).

At the hearing, Smith's counsel cross-examined the vocational expert referring to the written medical opinion of Dr. Brent Koprivica who gave an independent medical evaluation in 1996 as part of the Smith's workers' compensation proceedings for his hand and arm injuries at the workplace. (Tr. 61, 344-351). Dr. Koprivica found Smith to have a 20% permanent partial

disability of the right hand and of the left hand at the wrist levels and to have

a 10% permanent partial disability of both elbows based on "chronic medial

epicondylitis and mild cubital tunnel syndrome." (Tr. 349-50). Dr. Koprivica

also concluded his evaluation letter with this medical opinion:

> In reference to the above conditions, I believe Mr. Smith's decision to
> transfer into a forklift driving job is medically appropriate based on the
> permanent impairing conditions that he has sustained from cumulative
> injury. I would advise him to avoid repetitive pinching, repetitive
> grasping, repetitive ulnar deviation of the wrist, repetitive
> flexion/extension of the elbow, repetitive or sustained activities where
> direct pressure would be placed on the medial elbows or expose his
> upper extremities to vibration. All these restrictions are felt to be
> permanent in nature.

(Tr. 351). Smith's counsel asked the vocational expert what effect adding Dr.

Koprivica's restrictions to the RFC would have on her testimony. (Tr. 61). The

expert answered that of the jobs she had identified as available, "[n]one of

those jobs could be performed based on those limitations." (Tr. 61).

At the hearing, Smith's counsel informed the ALJ that Smith would

be seen by Dr. Curtis in July for a comprehensive evaluation scheduled by

counsel at the suggestion of Smith's chiropractor and that Dr. Curtis had

performed evaluations for DDS. (Tr. 55). The ALJ left open the record for Dr.

Curtis's evaluation. (Tr. 56). From the examination on July 13, 2011, Dr. Curtis

found "Bilateral medial epicondylitis, right greater than left," "Bilateral lateral

epicondylitis, right greater than left," "Recurrent carpal tunnel syndrome, A.

Chronic weakness right hand," and "Right cubital tunnel syndrome A. Chronic

weakness right hand." (Tr. 373). Dr. Curtis's report was supported with written
findings that included range of motion testing for wrist, elbow and shoulder,
and Phalen and Tinel testing of the wrists and elbows. Dr. Curtis also found:
"Chronic low back pain," "Chronic ankle weakness, swelling with abnormal gait
A. SP ankle fracture, B. Chronic bursitis/tendonitis," "Chronic bilateral knee
pain A. Right knee osteoarthritis with loss of range of motion/knee strength, B.
Left knee osteoarthritis 1. SP arthroscopy" (Tr. 373-74). Dr. Curtis completed
a physical RFC assessment that included exertional limitations for the right
ankle and weak right hand and assessed manipulative limitations for reaching,
handling and fingering based on "physical exam weakness, loss of thumb ROM,
and wrist loss ROM right side. He has loss of range of motion both shoulders."
(Tr. 381). Dr. Curtis's separate written report indicated she reviewed Smith's
medical records that included those of Dr. Jones, who provided a consultative
examination for the DDS on February 6, 2010. (Tr. 376).

**ISSUE ONE:   PROPER WEIGHING OF MEDICAL OPINIONS**

        The ALJ's duties include evaluating all medical opinions in the
record, assigning weight to each opinion, and discussing the weight given to
each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v.
Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "An ALJ must evaluate every
medical opinion in the record, . . ., although the weight given each opinion will
vary according to the relationship between the disability claimant and the

medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(citation omitted). The ALJ must explain with valid reasons the choice of a medical source's opinion over another when the opinions differ. *Quintero v. Colvin*, ---Fed. Appx.---, 2014 WL 2523705 at *4 (10th Cir. Jun. 5, 2014); *see Reveteriano v. Astrue*, 490 Fed. Appx. 945, 947 (10th Cir. 2012) ("[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ [404.1527(c)] and [416.927(c)].""). "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-579 (10th Cir. 2014). "Additionally, '[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.' SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996)." *Sullivan v. Colvin*, 519 Fed. Appx. 985, 988 (10th Cir. Mar. 13, 2013).

As to Dr. Curtis's consultative examination of Smith in the summer of 2011, the ALJ gave it "no weight except where it is consistent with the other examinations and treatment records." (Tr. 32). The ALJ found that Dr. Curtis's "findings from this examination far exceed those of the consultative examination [of Dr. Jones] or even claimant's treatment records, as well as an

orthopedic surgeon examination at KU by Greg A. Horton, M.D." *Id*. The ALJ

opined that the "consultative examination [of Dr. Jones] and the KU

examination are more reliable and more consistent with the findings on x-ray,

CT scan and magnetic resonance imaging (MRI)." *Id*. In this same paragraph

on Dr. Curtis's evaluation, the ALJ addressed findings on Smith's hand and

added the following:

> Prior to this last examination, there had been no complaints of carpal
> tunnel since 1995 when he was returned to medium work. The work
> limits in 1996 were not repeated in subsequent records and there is no
> treatment for carpal tunnel or the elbows after the surgeries. The
> claimant continues to operate a farm and care for livestock, although he
> reports that he has reduced the number of hogs and cows on his farm.

(Tr. 32).

Though not a treating physician, Dr. Curtis's opinion still must be

considered by the ALJ who must "provide specific, legitimate reasons for

rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). One of the

factors for weighing medical opinions is that "[g]enerally, the more consistent

an opinion is with the record as a whole, the more weight we will give to that

opinion." 20 C.F.R. § 404.1527(c)(4). At the same time, the ALJ may not

simply make the conclusory statements that other medical reports are more

consistent with the record without explaining that conclusion and without

citing any evidence to support that finding. *See Langley v. Barnhart*, 373 F.3d

1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify

what the claimed inconsistences were between Dr. Williams's opinion and the

other substantial evidence in the record, his reasons for rejecting that opinion are not sufficiently specific to enable this court to meaningfully review his findings." (internal quotation marks and citation omitted); *see also Allen v. Astrue*, 2010 WL 2925169 at *8 (D. Kan. Jul. 21, 2010). The ALJ's decision fails to identify the claimed inconsistencies between Dr. Curtis's examination findings and the rest of the medical evidence of record. Nor does the decision attempt to explain those inconsistencies based on other cited substantial evidence as reasons for discrediting Dr. Curtis's opinions. The insufficiency of the ALJ's decision is particularly noteworthy as to Dr. Curtis's findings on Smith's manipulative limitations. On remand, the ALJ must make these additional findings for the court to meaningfully review this factor.

The plaintiff takes issues with the ALJ's finding that before Dr. Curtis's examination "there had been no complaints of carpel tunnel since 1995 when he was returned to medium work." (Tr. 32). Substantial evidence does not support this finding. Prior to Dr. Curtis's examination, the plaintiff testified before the ALJ about Dr. Koprivica's restrictions saying that he "had no hands since" the operation, that his hands "hurt just like" his ankle, and that the pain increases with exertion and takes longer to subside with more exertion. (Tr. 49). The plaintiff testified that following the surgery his employer accommodated his hand problems by transferring him to the position of forklift operator which is medium work. There is no substantial evidence in the record

12

to show that a forklift operator requires physical demands inconsistent with Dr. Koprivica's work restrictions. If anything, Dr. Koprivica's letter opinion shows otherwise, "In reference to the above conditions, I believe Mr. Smith's decision to transfer into a forklift driving job is medically appropriate based on the permanent impairing conditions that he has sustained from cumulative injury." (Tr. 351).

The plaintiff takes issue with what the ALJ appears to conclude from the finding that "[t]he work limits [of Dr. Koprivica] were not repeated in subsequent records." (Tr. 32). The plaintiff challenges the ALJ's medical speculation over the significance of these permanent limitations not being repeated in subsequent records. The ALJ's decision fails to identify which subsequent records should have repeated such limits. Dr. Koprivica imposed these limits as part of his findings that Smith had *permanent* partial disabilities in both hands and elbows and that Smith's transfer to forklift operator was "medically appropriate based on the *permanent* impairing conditions." (Tr. 351, italics added). The ALJ appears to be offering his own "medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for this determination." *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1262 (D. Kan. 2002). The only medical evidence of record is that these limitations are permanent, and the ALJ has no medical evidence from which to conclude otherwise.

13

The plaintiff next challenges the lack of a proper inquiry and evidence to support the ALJ's finding that "there is no treatment for carpal tunnel or the elbows after the surgeries." (Tr. 32). This does not appear to be a finding that the plaintiff failed to follow prescribed treatment, 20 C.F.R. § 404.1530, as much as it is a credibility finding based on minimal treatment for the condition. But as the plaintiff notes, there is no medical evidence of record to show what additional treatment would be consistent with ongoing limitations for bilateral epicondylitis, recurrent carpal tunnel syndrome, and right cubital tunnel syndrome. Again, the ALJ has inappropriately stepped into the role of a medical expert in opining what clinical signs and treatment would be necessary for such ongoing limitations to be relevant and applicable after surgery. The court will remand for further proceedings wherein the ALJ either must articulate some adequate basis for discounting the opinions and limitations imposed by Dr. Curtis and Dr. Kopriavica on Smith's hands and elbows or come back to the vocational expert with a proper hypothetical including these limitations.

While on remand, the ALJ will have the chance to revisit and correct his credibility determinations. While the ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence," his decision still must "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "[C]ommon

14

sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

The Commissioner does not defend the ALJ's finding that links the plaintiff's alleged onset of disability to his unemployment. There is no substantial evidence of record to support this finding, as the former employer has indicated Smith received short-term disability from December of 2008 through May 31, 2009, and during this period the employer's business was sold. (Tr. 186). The employer's records include a note from Smith's doctor for medical leave at least through June 23, 2009. *Id.*

Because Smith received unemployment benefits for the third and fourth quarters of 2008, the ALJ found "[i]t is inconsistent for the claimant to allege he was disabled in the same period that he received unemployment compensation benefits and his credibility is thereby diminished." (Tr. 33). An ALJ may consider the claimant's "collection of unemployment benefits in assessing his credibility." *Peralta v. Colvin*, 2014 WL 2021852 at 83 (D. Colo. May 16, 2014) (citing in part *Vanetta v. Barnhart*, 327 F. Supp. 2d 1317, 1321 (D. Kan. 2004)). The ALJ's assessment of this factor, however, should look to the particular circumstances of the case:

> "Applying for unemployment benefits may be some evidence, though not conclusive, to negate a claim of disability." *Johnson* [*v. Chater*], 108 F.3d [178] at 180–81 [(8th Cir. 1997)]. See also *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir.1998) (stating "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability," but noting the ALJ cannot base an

15

adverse credibility finding on this fact alone). While it was not error for the ALJ to consider Lopez's application for unemployment benefits, Lopez argues the ALJ placed too much emphasis on this factor in contravention of the current policy of the Social Security Administration, as outlined in a memorandum dated August 9, 2010, from Chief Administrative Law Judge Frank A. Cristaudo to all administrative law judges. See Doc. No. 13–1 at 3.

Judge Cristaudo's memorandum (the Memo) references Social Security Ruling 00–01c, 2000 WL 38896 (Jan. 7, 2000), and *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), which discuss the intersection of claims under the Social Security Act and the Americans with Disabilities Act. In *Cleveland*, the Supreme Court held that claims under the Social Security Act and the Americans with Disabilities Act do not conflict to the point where courts should apply a special negative presumption that precludes relief under the other Act. *Cleveland*, 526 U.S. at 802–03, 119 S.Ct. 1597. In other words, it is not entirely inconsistent for a person to assert "total disability" under the Social Security Act while asserting he or she could "perform the essential functions of the job" under the ADA because the Acts utilize different standards. *Id.* at 807, 119 S.Ct. 1597. For the same reasons, the Memo states, "[I]t is SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits." Doc. No. 13–1 at 3. The Memo reiterates that an application for unemployment benefits is evidence that the ALJ must consider together with all of the other evidence and mentions that the underlying circumstances are often more relevant than the mere application for and receipt of benefits.

*Lopez v. Colvin*, 959 F.Supp.2d 1160, 1174 (N.D. Iowa 2013). As the plaintiff contends, the ALJ's decision fails to consider and discuss the underlying circumstances whereby he could qualify for disability benefits under the guidelines even though he may remain capable of sedentary work for which he could claim unemployment benefits. At the hearing, Smith's counsel argued Smith was disabled under the guidelines or grids making the ALJ aware of the circumstances in this case. Consequently, that Smith drew unemployment

benefits in late 2008 is a factor of questionable weight, at best, particularly because the ALJ has failed to look into the underlying circumstances.

Finally, the ALJ summarily states, "the claimant continued to perform farm work after his alleged onset date of disability, although on a reduced basis." (Tr. 33). This statement fails to reveal if the ALJ accurately assessed Smith's daily living activities, including the farm work, based on all the evidence of record. Simply referring to Smith's described work as done on the farm fails to account for its limited nature, as confirmed by his testimony and the third-party statements, and for the help he received from his adult son. Smith also testified to other attempts at farm labor and his inability to do the required work resulting in the loss of this part-time employment. The ALJ's decision fails to provide a basis on which to make a meaningful review of the ALJ's credibility findings or to conclude that substantial evidence supports them.

IT IS THEREFORE ORDERED that the decision of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 22nd day of August, 2014, Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge


17